

IN THE CHANCERY COURT
FOR DAVIDSON COUNTY, TENNESSEE

| | | |
|---|---|---|
| N.D. MANAGEMENT, INC., MEDAPPROACH HOLDINGS, INC. and W. BRADLEY DANIEL, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 18-949-I |
| v. | ) ) | JURY DEMAND |
| GREGORY D. HAWKINS AND SHARON HAWKINS, | ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiffs N.D. Management, Inc. ("NDM"), MedApproach Holdings, Inc. ("MedApproach Holdings") and W. Bradley Daniel ("Mr. Daniel") bring this action against Defendants Gregory Hawkins and Sharon Hawkins for breach of contractual duty to negotiate in good faith, for damages incurred in reliance on Defendants' promises to adhere to the parties' settlement agreement, and for abuse of process.

### PARTIES

1. Plaintiffs NDM and MedApproach Holdings are Delaware Corporations with principal places of business in Nashville, Tennessee.

2. MedApproach Holdings is the general partner of non-party MedApproach, L.P., a Delaware limited partnership which maintains its principal place of business in Nashville, Tennessee. MedApproach L.P. holds 75% of the shares of NDM. NDM, in turn, is the general partner of Danco Investors Group, which commercializes certain pharmaceutical products.

3. Plaintiff W. Bradley Daniel is a resident of the state of Tennessee. He is the principal of MedApproach Holdings, and he holds one of the proxies to vote the shares of NDM.

4818-2396-4529.2

EXHIBIT A

4. Defendants Gregory Hawkins and Sharon Hawkins are residents of the State of New York.

5. Sharon Hawkins and Gregory Hawkins, who are husband and wife, are limited partners in MedApproach L.P. Gregory Hawkins was one of the original investors in MedApproach L.P. and he later transferred nominal ownership of that interest into the name of Sharon Hawkins. For purposes of this Complaint, Gregory and Sharon Hawkins have jointly negotiated with MedApproach Holdings and have committed the acts set forth herein in concert.

## JURISDICTION AND VENUE

6. The Court has subject matter and personal jurisdiction over Defendant as they purposefully availed themselves of the privilege of conducting business in Tennessee and same are subject to service of process.

7. Venue is proper before this Court, as a substantial part of the events or omissions giving rise to this claim occurred in this District.

## BACKGROUND

8. On December 20, 2011, MedApproach Holdings filed a lawsuit in this Court against Gregory D. Hawkins and Sharon Hawkins, captioned *MedApproach Holdings, Inc., v. Gregory and Sharon Hawkins*, Case No. 3:11-cv-1199 (the "TN lawsuit"), asserting, among other things, that the Hawkinses failed to pay management and other fees owed to MedApproach Holdings.

9. On August 2, 2013, shortly after the TN Lawsuit survived certain dispositive motions, Sharon Hawkins filed a lawsuit in the United States District Court for the Southern District of New York against MedApproach Holdings and Mr. Daniel, captioned *Sharon Hawkins on behalf of MedApproach, L.P. v. MedApproach Holdings, Inc. and W. Bradley Daniel*, Civil Action No. 1:13-cv-5434-ALC (the "NY Lawsuit").

2

10. The NY Lawsuit asserted, among other things, a challenge to a proxy held by Mr. Daniel to vote and control the shares of NDM, which is the general partner of Danco Investors Group. This proxy gives the holders control over the enterprise consisting of various corporate entities. This structure was created for many reasons, including to protect the confidentiality of the investors because the corporate entities were developing and selling a controversial pharmaceutical product—mifepristone, also known as RU-486, a medication used to end pregnancy.

11. Following the filing of the TN Lawsuit and the NY Lawsuit, Mr. Daniel and MedApproach Holdings engaged in numerous unsuccessful settlement negotiations with Defendants.

12. On November 30, 2015, the United States District Court for the Southern District of New York dismissed all proxy-related claims in Defendants' NY Lawsuit. Following that dismissal, the parties again entertained the possibility of reaching a global settlement.

13. The parties conducted a private settlement conference on February 2, 2016, at the offices of Waller Lansden Dortch & Davis, MedApproach Holdings' attorneys, in Nashville, Tennessee. Mr. Hawkins attended on behalf of himself and Ms. Hawkins, with his Tennessee counsel, Neal & Harwell. Mr. Hawkins represented that he was acting on behalf of himself and his wife, Ms. Hawkins.

14. At the February 2, 2016 settlement conference in Nashville, the parties reached an agreement and framework that settled their disputes and to dismiss the two cases, and agreed to move forward in good faith to complete the necessary corporate documents to accomplish one part of that resolution. At the conclusion of the parties' negotiations, Mr. Daniel and Mr. Hawkins shook hands, congratulated each other on the agreement that had been struck, and agreed that they would move forward to implement their agreement in good faith.

3

15. At the February 2, 2016 settlement conference, counsel for the parties marked up an earlier September 16, 2014 settlement letter, which was a settlement counter-proposal to Hawkins' attorney's September 5, 2014 settlement proposal (the "February 2, 2016 Settlement Agreement"). Gregory Hawkins represented that he and Ms. Hawkins agreed to the terms of the February 2, 2016 Settlement Agreement, and he initialed each page of the marked-up letter to evidence the intent of the Hawkinses to be bound by the settlement terms and to complete all remaining corporate documents in good faith. Mr. Hawkins promised Mr. Daniel that he would pursue those terms in good faith.

16. As part of the February 2, 2016 Settlement Agreement, the parties agreed to dismiss both the NY Lawsuit and the TN lawsuit. The parties also agreed to convert NDM into an "S" Corporation and agreed—on the face of the February 2, 2016 Settlement Agreement— that the reorganization documents reflecting that conversion would reflect that Ms. Hawkins, as a beneficial owner, would receive only non-voting shares of NDM, while Mr. Daniel would receive voting shares of NDM. The parties agreed that Mr. Daniel would receive the voting shares and Ms. Hawkins would receive non-voting shares because that arrangement would most closely replicate the then-existing governance structure of NDM, which was otherwise left unchanged.

17. Plaintiffs, in reliance on the February 2, 2016 Settlement Agreement and the Hawkins's assent to it, undertook efforts to pursue the settlement terms in good faith. Among other things, Plaintiffs retained and paid outside experts to analyze the contemplated reorganization and to draft the reorganization documents according to the principals set forth in the February 2, 2016 Settlement Agreement. Plaintiffs also dismissed the TN lawsuit and tendered certain payments to Mr. Hawkins as set forth in the February 2, 2016 Settlement Agreement.

18. Plaintiffs incurred these expenses and efforts with Defendants' knowledge and encouragement, and in reliance on Defendants' promises.

19. Although Plaintiffs pursued the terms of the February 2, 2016 Settlement Agreement in good faith, Defendants did not. Despite their agreement in the February 2, 2016 Settlement Agreement that all voting stock of NDM would go to Mr. Daniel, and not to Defendants, Defendants later demanded that they receive a "veto" over NDM. That is, although they agreed in the February 2, 2016 Settlement Agreement that they would negotiate in good faith to reorganize NDM such that it replicated the existing arrangement among the parties—*i.e.*, with voting control in the hands of Mr. Daniel and MedApproach Holdings—Defendants breached their obligations to pursue these terms in good faith by demanding the exact opposite of what they agreed to in the February 2, 2016 Settlement Agreement.

20. Indeed, R. Scott Thompson, New York counsel for Defendants, informed Plaintiffs' counsel that Defendants insisted on a "veto power" exercisable on their behalf as to NDM's actions. This was directly contrary to Section 1(B) of the February 2, 2016 Settlement Agreement which clearly dictates that Plaintiff would only receive non-voting shares in NDM. Defendants similarly sought control over other aspects of NDM's business and management, in contravention of the February 2, 2016 Settlement Agreement.

21. Defendants contravened the Settlement Agreement in these ways only after having caused Plaintiffs to incur substantial costs and efforts on documenting the reorganization.

22. Plaintiffs objected to Defendants' radical departure from their prior agreement. For example, Plaintiffs noted to Defendants that the parties did not agree to or even discuss veto rights during the settlement conference on February 2, 2016, and that a veto was the exact opposite of what the February 2, 2016 Settlement Agreement provided.

23. While encouraging Plaintiffs to continue their efforts to create reorganization

documents, Defendants and their New York counsel ultimately reiterated their insistence on not merely a vote as to NDM, but a conclusive veto over its core operations.

24. In addition, despite having agreed to maintain the status quo of NDM in the Settlement Agreement, Defendants sought improperly to wield the NY Lawsuit as an improper parallel means to force MedApproach Holdings and Mr. Daniel to yield control to them.

25. Defendants' New York counsel specifically stated that the objective of the NY Lawsuit, and the process subsequently filed therein, was to "gain control" over NDM and the partnership in which the Hawkinses were limited partners.

26. Even after Judge Carter, the jurist presiding in the NY Lawsuit, dismissed the Hawkinses' challenge to the control provisions of the parties' agreements, Defendants continued to attempt to use the NY Lawsuit to force MedApproach Holdings and Mr. Daniel to grant what Defendants had lost in the NY Lawsuit.

27. Defendants intentionally used the NY Lawsuit in an effort to inflict needless costs on Plaintiffs and to pressure them into relinquishing corporate control over NDM and the related partnerships.

28. Even after the court in the NY Lawsuit dismissed all of the Hawkins's claims concerning control, the Hawkinses continued to serve extensive discovery in the NY Lawsuit concerning that issue.

29. Defendants thus improperly wielded process in the NY lawsuit in bad faith for an invalid, collateral purpose—namely, to force Plaintiffs to yield control of the corporate enterprises to them which was also a separate act of their bad faith in completing the agreed negotiations.

30. There exists an implied covenant of good faith and fair dealing in connection with the agreements alleged above.

6

## COUNT I
### (Breach of Contractual Duty to Negotiate in Good Faith)

31. Plaintiffs repeat the allegations of the foregoing paragraphs as if incorporated here in full.

32. The parties entered into the February 2, 2016 Settlement Agreement, which bound the parties, among other things, to pursue NDM's reorganization along the terms set forth in the February 2, 2016 Settlement Agreement in good faith.

33. Plaintiffs performed their obligations under the February 2, 2016 Settlement Agreement by pursuing the terms in good faith.

34. Moreover, following the terms thereunder, Plaintiffs tendered two $50,000 checks to Mr. Hawkins, and MedApproach Holdings dismissed the TN Lawsuit with prejudice and continued to complete the terms of the corporate restructuring in good faith.

35. Defendants breached their duty to negotiate in good faith imposed by the February 2, 2016 Settlement Agreement by, among other things, demanding that their non-voting shares of NDM have a supervoting "veto right" and by maintaining the NY Lawsuit to pressure Plaintiffs to relinquish corporate control.

36. Defendants' breach of their duty to negotiate in good faith the corporate documents needed to finalize the terms in the February 2, 2016 Settlement Agreement caused and will cause plaintiffs to suffer damages.

## COUNT II
### (Promissory Estoppel)

37. Plaintiffs repeat the allegations of the foregoing paragraphs as if incorporated here in full.

38. During the parties' negotiations, Defendants promised to pursue the terms set forth in the February 2, 2016 Settlement Agreement. For example, Defendants promised that they would pursue in good faith a reorganization of NDM that involved Mr. Daniel holding voting shares and Defendants holding non-voting shares.

39. Plaintiffs relied on those promises to their detriment, by, among other things, dismissing the TN Lawsuit and expending money and time pursuing the reorganization on the terms that Defendants promised was acceptable to them.

40. Plaintiffs' reliance on Defendants' promises was reasonable, foreseeable and, indeed, intended by Defendants.

41. Defendants breached their promises by refusing to pursue the terms set forth in the February 2, 2016 Settlement Agreement and by insisting on terms to the contrary of what they had promised—namely, that they would receive supervoting shares of NDM.

42. As a proximate result of Defendants' conduct, Plaintiffs have suffered damages, in an amount to be determined at trial, as a result.

## COUNT III
### (Abuse of Process)

43. Plaintiffs repeat the allegations of the foregoing paragraphs as if incorporated here in full.

44. Defendants employed process in the NY Lawsuit with the intent to harm Defendants in an improper manner for the purpose of obtaining a collateral objective.

45. Defendants' stated purpose in wielding process in the NY Lawsuit was to force

8

Mr. Daniel and MedApproach Holdings to relinquish control of NDM and related partnerships to Defendants.

46. Defendants wielded process in the NY Lawsuit for this purpose even after the court in the NY Lawsuit dismissed all of Defendants' claims challenging control of NDM and the related partnerships.

47. Defendants have abused process in an effort to drive up expense and inconvenience to Plaintiffs, for the purpose of pressuring Plaintiffs into giving up control despite their loss of that issue in the NY Lawsuit.

48. Defendants use of process in the NY Lawsuit was without justification and was in further of an improper objective—namely, obtaining objectives collateral to the NY Lawsuit.

49. As a proximate result of Defendants' conduct, Plaintiffs have suffered damages, in an amount to be determined at trial, as a result.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

A. Award Plaintiffs damages suffered as a result of Defendants' breach of their contract;

B. Award Plaintiffs damages suffered as a result of their reliance on Defendants' promise to adhere to the terms of the Settlement Agreement;

C. Award Plaintiffs damages suffered as a result of Defendants' abuse of process in the NY lawsuit;

D. Award MedApproach Holdings and Mr. Daniel any other or additional relief that the Court deems proper;

E. Other relief as the Court may deem appropriate

F.  Plaintiffs demand a jury.

						_____
						Robert E. Boston (TN Bar No. 9744)
						Kevin T. Elkins (TN Bar No. 33280)
						WALLER LANSDEN DORTCH & DAVIS, LLP
						511 Union Street, Suite 2700
						Nashville, Tennessee 37219
						Phone: (615) 244-6380
						Facsimile: (615) 244-6804
						Bob.Boston@wallerlaw.com
						Kevin.Elkins@wallerlaw.com

						*Attorneys for Plaintiffs*

10