| | | |
|---|---|---|
| N.D. MANAGEMENT, INC.,<br>MEDAPPROACH HOLDINGS, INC.,<br>and W. BRADLEY DANIEL, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:18-cv-00890<br>Judge Aleta A. Trauger |
| GREGORY D. HAWKINS<br>and SHARON HAWKINS, | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM & ORDER

Pending before the court is a Motion to Dismiss (Docket No. 6) filed by the defendants, Gregory and Sharon Hawkins, to which the plaintiffs, N.D. Management, Inc. ("NDM"), MedApproach Holdings, Inc. ("MedApproach"), and W. Bradley Daniel have filed a Response in opposition (Docket No. 9), and the Hawkinses have filed a Reply (Docket No. 10). For the reasons discussed herein, the Hawkinses' motion will be granted and the plaintiffs' claims will be dismissed.

## BACKGROUND[1]

NDM and MedApproach are corporations based in Nashville, Tennessee. MedApproach is the general partner of non-party MedApproach, L.P., which holds 75% of the shares of NDM. These entities were created to invest in the development, production, and sale of an abortion drug known as mifepristone or, alternatively, RU-486. Daniel is the principal of MedApproach and holds one of the proxies to vote the shares of NDM. The Hawkinses, who are married and reside

---

[1] The facts are taken in the light most favorable to the plaintiffs.

1

in New York, are limited partners in MedApproach, L.P. Gregory Hawkins was one of the original investors in MedApproach, L.P. and later transferred his interest to Sharon Hawkins. Litigation between the parties has been ongoing for the better part of the last decade. In December 2011, the plaintiffs filed a lawsuit in this court against the Hawkinses (the "TN Case").[2] In that suit, the plaintiffs alleged that the Hawkinses owed them millions of dollars in unpaid management fees, stemming from an investment the Hawkinses made without using the plaintiffs' services. In July 2013, this court dismissed all but one of the plaintiffs' claims. Trial on the remaining claim was scheduled for 2016. In 2013, Sharon Hawkins—individually and on behalf of MedApproach, L.P.— brought suit against MedApproach and Daniel in the Southern District of New York, alleging that they had breached their fiduciary duties in a number of ways (the "NY Case").[3] Hawkins brought several claims in the NY Case, including a challenge to a proxy held by Daniel to vote and control the shares of NDM. On November 30, 2015, Judge Andrew L. Carter, Jr. dismissed as untimely all proxy-related claims.

In February 2016, the parties and their attorneys met in Nashville to discuss the potential settlement of both cases. At the settlement conference, the parties agreed to a tentative framework by which they would resolve their disputes and dismiss the two cases. The tentative framework was memorialized at the settlement conference by the parties' counsel, who marked up an earlier September 16, 2014 settlement letter ("Settlement Agreement"). The Settlement Agreement contains various mark-ups, including added text and crossed-out deletions. Daniel, Gregory Hawkins, and the parties' counsel all initialed on the bottom of each page to indicate assent to the mark-ups. The parties wrote the annotation "Agreed" next to a number of terms. (Docket 7-4 at

---

[2] *MedApproach Holdings, Inc. v. Gregory D. Hawkins and Sharon Hawkins*, No. 3:11-cv-1199.
[3] *Sharon Hawkins v. MedApproach Holdings, Inc., et al.*, No. 1:13-cv-5434.

9.)[4]  They did not write "Agreed" next to Section 1.B, which stated "Pro rata distribution of non-voting shares of NDM to beneficial owners with voting shares distributed to Brad Daniel."  Instead, the parties wrote "(Subject to attorney review and discussion)."  (*Id.*)  At the settlement conference's conclusion, Daniel and Gregory Hawkins shook hands, congratulated each other on their agreement, and agreed that they would move forward to implement their agreement in good faith.

On April 11, 2016, counsel for the Hawkinses emailed counsel for the plaintiffs, explaining that the Hawkinses sought certain protections against any potential abuse of voting power by Daniel.  The email stated, in relevant part:

> Greg and Sharon are obviously fine with the idea of Brad having more or less discretionary authority to run NDM going forward on all matters of day to day operations and virtually everything else.  There are a few issues as to which Greg and Sharon believe that there should be a veto power exercisable on their behalf . . . .  The specific subjects include (i) proposed payments to shareholders, (i) payments to Brad, (iii) changes to any provision concerning shareholder rights, and (iv) any proposal to not make a tax distribution.

(Docket No. 7-1 at 2.)  Negotiations between the parties continued.  In reliance on the Settlement Agreement and with the Hawkinses' knowledge and encouragement, the plaintiffs undertook efforts to finalize settlement.  They retained and paid outside experts to analyze the contemplated

---

[4] Several documents in the record are referenced in the Complaint, relied upon in the parties' briefs, and cited in this Memorandum.  Generally speaking, if, in support of a motion under Rule 12(b)(6) or 12(c), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  The obligation to treat a motion to dismiss as a summary judgment motion is typically mandatory if matters outside the pleadings are not excluded by the court.  *See Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc*., 452 F.3d 494, 503 (6th Cir. 2006) (applying Rule 12(d) to a Rule 12(c) motion).  However, a court may consider matters outside the pleadings without converting the motion to a Rule 56 motion if the documents are "incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."  5B Wright & Miller, Federal Practice and Procedure § 1357 (3d ed.), *cited in Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).

corporate reorganization and to draft reorganization documents consistent with the Settlement Agreement. They tendered payments to Gregory Hawkins as contemplated by the Settlement Agreement. On October 11, 2016, the TN Case was dismissed pursuant to a separate written settlement agreement between the parties. However, the parties were unable to reach an agreement with regard to the potential restraints on Daniel's control of NDM. The NY Case was therefore not dismissed and, on March 6, 2017, MedApproach and Daniel filed a motion in the Southern District of New York to enforce the Settlement Agreement as valid and binding.

On January 9, 2018, United States Magistrate Judge Stewart D. Aaron issued a Report and Recommendation denying MedApproach and Daniels' motion. Judge Aaron summarized the parties' positions as follows:

> It is Defendants' position that Mr. Hawkins, on behalf of Mrs. Hawkins, impliedly agreed to the provision of the February 2016 settlement document which states that "voting shares" of NDM are to be "distributed to Mr. Daniel," and that the words "subject to attorney review and discussion" merely "contemplated executing additional corporate documents to effectuate the specific terms of the Settlement Agreement." Mr. Hawkins (on behalf of Mrs. Hawkins), however, contends that no agreement was reached "on the protections that [Mrs. Hawkins] would have in connection with her ownership interest (proposed to be through non-voting shares) in the restructured NDM."

(Docket No. 7-5 at 4–5.) In recommending denial of the motion, Judge Aaron found that the annotation "subject to attorney review and discussion" next to Section 1.8 of the Settlement Agreement means "the equivalent of conditional upon or depending upon" and that, consequently, "any settlement was conditional upon further discussion between counsel for the parties, and therefore that the 'subject to' language constituted that express reservation of the right not to be bound." (*Id*.) He concluded that no enforceable settlement agreement was reached between the parties. (*Id*. at 9.)

MedApproach and Daniel filed an objection disputing that conclusion. Judge Carter rejected the plaintiffs' arguments, adopted in full Judge Aaron's Report and Recommendation, and

held that the parties did not reach a binding agreement. With regard to Section 1.8 of the Settlement Agreement, Judge Carter wrote:

> The most critical of these objections is to the Magistrate Judge's finding that the written notation 'subject to attorney review and discussion' next to the distribution of shares provision in the Settlement Agreement (§ 1.8) constituted an express reservation of the right not to be bound and thus the parties did not agree to all material terms.

(Docket No. 7-6 at 3.) In adopting the Report and Recommendation and overruling MedApproach and Daniels' objections, Judge Carter concluded:

> Magistrate Judge Aaron concluded that 'subject to' is the equivalent of 'condition [sic] or depending on.' This is undoubtedly correct. On its face, the language of the notation indicates that the term remained an open issue. Contrary to Defendants' assertion, the notation is not akin to a provision indicating that parties will enter a more formalized agreement pursuant to the terms. If the phrase 'subject to attorney review and discussion' called for the drafting of additional corporate documents, then there would be text in the agreement indicating just that. . . . But there is not. On the contrary, the words 'attorney *review and discussion*' demonstrate that the issue was open and subject to further negotiation. Accordingly, the Court agrees with Judge Aaron's finding that the factor weighs in favor of non-enforcement. This should end the inquiry.

(*Id*. at 3–4.) On September 4, 2018, the plaintiffs filed their Complaint in this case in the Davidson County Chancery Court. (Docket No. 1-2.) On September 20, 2018, the case was removed to this court. (Docket No. 1.) The plaintiffs bring three causes of action: breach of contractual duty to negotiate in good faith, promissory estoppel based on the Hawkinses' promises to adhere to the parties' settlement agreement, and abuse of process.

## LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the

claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

## ANALYSIS

The Hawkinses argue that all of the plaintiffs' claims derive from the Hawkinses' demand that the Hawkinses receive a "veto" over NDM, despite their alleged agreement via Section 1.8 of the Settlement Agreement that Daniel would retain all voting stock of NDM. In Count I (breach of duty to negotiate in good faith), the plaintiffs contend that the Hawkinses breached their obligation to implement the Settlement Agreement's terms in good faith by demanding that their non-voting shares of NDM have a super voting "veto right" and by maintaining the NY Case to pressure the plaintiffs into relinquishing corporate control of NDM. In Count II (promissory

estoppel), the plaintiffs claim that, during the parties' negotiations, the Hawkinses promised to implement the terms set forth in the Settlement Agreement, including a reorganization of NDM that granted voting shares to Daniel and non-voting shares to the Hawkinses. The plaintiffs allege that the Hawkinses breached their promises by refusing to adhere to the terms set forth in the Settlement Agreement and by insisting on terms contrary to what they had promised. In Count III (abuse of process), the plaintiffs allege that the Hawkinses filed the NY Case with the objective to harm MedApproach and Daniel. The plaintiffs claim that the Hawkinses continue to prosecute the NY Case for this purpose, even after dismissal of their claims challenging control of NDM and the related partnerships. The plaintiffs allege that the Hawkinses' continued prosecution of the NY Case constitutes an effort to drive up expense and inconvenience to MedApproach and Daniel, for the purpose of pressuring the plaintiffs to give up control of NDM.

The Hawkinses contend that Counts I and II fail because the plaintiffs are precluded from relitigating whether the Settlement Agreement binds the Hawkinses to non-voting NDM shares. They argue that Count III fails because their prosecution of the NY Case is not the type of process that can sustain a claim for abuse of process.[5] The court will address each count in turn.

The doctrine of res judicata provides that a final judgment on the merits of an action precludes the "parties or their privies from relitigating issues that were or could have been raised" in the prior action. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995). Courts apply the doctrine of res judicata to

_____

[5] The Hawkinses make two additional arguments for the first time in their Reply: that the plaintiffs are barred by the doctrine of claim preclusion from asserting claims they could have brought previously in the NY Case, and that the plaintiffs' abuse of process claim is barred by a Tennessee statute of limitations. (*See* Docket No. 10.) The court need not reach these arguments because the plaintiffs' claims are all resolved on other grounds. However, the court notes that, as a general matter, it is not effective practice to raise new arguments for the first time in a reply brief unless they directly counter new assertions made for the first time by the opposing party in the response brief.

promote the finality of judgments, which in turn increases certainty, discourages multiple litigations, and conserves judicial resources. *Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992); *see also Moulton v. Ford Motor Co*., 533 S.W.3d 295, 296 (Tenn. 1976) ("[R]es judicata is not based upon any presumption that the final judgment was right or just.  Rather, it is justifiable on the broad grounds of public policy which requires an eventual end to litigation.").  The doctrine of res judicata encompasses both claim preclusion and issue preclusion. *Migra v. Warren City Sch. Dist. Bd. of Educ*., 465 U.S. 75, 77 n.1 (1984); *Rawe v. Liberty Mut. Fire Ins. Co*., 462 F.3d 521, 528 n.5 (6th Cir. 2006).  "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Id*.  Issue preclusion, also known as collateral estoppel, "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Id*.

"Issue preclusion bars relitigation of an issue when: (1) the identical issue was raised and actually litigated in a prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior proceeding." *Gen. Elect. Med. Sys. Europe v. Prometheus Health*, 394 F. App'x. 280, 283 (6th Cir. 2010) (citation omitted).  Under issue preclusion, once an issue is determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action when used against any party to the prior litigation. *Montana v. United States*, 440 U.S. 147, 152-54 (1979).

The Hawkinses are correct that the plaintiffs are collaterally estopped from arguing that the Settlement Agreement conclusively binds the Hawkinses to non-voting shares of NDM.  In adopting Magistrate Judge Aaron's Report and Recommendation, Judge Carter determined this

exact issue in a final manner. (*See* Docket No. 7-6 at 3–4 ("Magistrate Judge Aaron concluded that 'subject to' is the equivalent of 'condition or depending on.' This is undoubtedly correct. On its face, the language of the notation indicates that the term remained an open issue.").) Judge Carter thus concluded that there was no enforceable agreement between the parties. (*See id*. at 4.) Daniel and MedApproach had a full and fair opportunity to litigate the issue in that case. This is a textbook case of issue preclusion.

With regard to Count I, the plaintiffs argue that they nonetheless have an actionable claim for breach of the duty to negotiate in good faith because "the law of New York, and many other jurisdictions, recognizes that even where the parties fail to create an enforceable agreement, they can still bind themselves to pursue the stated negotiation objectives in good faith, and a failure to exercise good faith gives rise to a claim." (*See* Docket No. 9 at 3 (citing *Sawabeh Info. Servs. Co. v. Brody*, 2014 U.S. Dist. LEXIS 1050, at *35 (S.D.N.Y. Jan. 6, 2015). The court must therefore determine what law governs the claim.

When a federal court hears a diversity action, the law of the forum state, including choice-of-law rules, applies. *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009); *Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir.1998). Thus, the court must apply Tennessee's choice-of-law rules, which follow the law of *lex loci contractus* in contract disputes. *See Vantage Tech v. Cross*, 17 S.W. 3d 637, 650 (Tenn. Ct. App. 1999). *Under lex loci contractus*, "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." *Vantage Tech*, 17 S.W. 3d at 637 (*citing Ohio Cas. Ins. Co. v. Travelers Indem. Co*., 493 S.W.2d 465, 467 (Tenn. 1973)). The Settlement Agreement does not contain a choice-of-law provision. (See Docket No. 7-4.) Absent contrary intent, the law of the state where the contract was entered applies. Tennessee law therefore governs the claim.

Under Tennessee law, a duty to negotiate in good faith is only actionable if derived from an enforceable contractual agreement. *See Barnes & Robinson Co. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 643 (Tenn. Ct. App. 2006) ("Tennessee courts, however, have not recognized a duty to negotiate in good faith absent an express contractual agreement to do so."). Because Judge Carter has already decided that the settlement agreement does not constitute an enforceable agreement between the parties, there can be no express contractual agreement to negotiate in good faith, as required by Tennessee law. The plaintiffs therefore cannot sustain a claim for breach of duty to negotiate in good faith. Count I will be dismissed.

The allegations comprising Count II are likewise barred by issue preclusion. The plaintiffs assert a claim for promissory estoppel based on the Hawkinses' promise to implement the terms of the Settlement Agreement: "Defendants breached their promises by refusing to pursue the terms set forth in the February 2, 2016 Settlement Agreement and by insisting on terms to the contrary of what they had promised—namely, that they would receive supervoting shares of NDM." Judge Carter ruled that, by the terms of the Settlement Agreement, the Hawkinses agreed only to an allocation of voting and non-voting shares that was subject to attorney review and discussion. On April 11, 2016, two months after the settlement conference, counsel for the Hawkinses emailed counsel for the plaintiffs, inviting a discussion about the allocation of voting and non-voting shares, among other things. (*See* Docket No. 7-1 at 2.) The plaintiffs are precluded from arguing that the Settlement Agreement bound the Hawkinses to non-voting shares, and they are thus precluded from arguing that the Hawkinses broke a promise to "pursue" the terms of the Settlement Agreement by seeking voting shares. The plaintiffs therefore do not set forth facts supporting that the Hawkinses failed to implement the terms of the Settlement Agreement. They fail to state a claim for promissory estoppel. Count II will be dismissed.

With regard to Count III, the Hawkinses argue that a claim for abuse of process cannot be sustained for litigation such as the NY Case, where some of their claims have survived a motion to dismiss. Indeed, under New York law,[6] no civil action can sustain an abuse of process claim. *See Muro-Light v. Farley*, 95 A.D.3d 846, 847 (2012) ("The institution of a civil action by summons and complaint will not give rise to a claim to recover damages for abuse of process, as doing so is not legally considered the type of process capable of being abused.") (citing *Curiano v. Suozzi*, 63 N.Y.2d 113, 116; *Alexsey v. Kelly*, 205 A.D.2d 649, 650; *Sokol v. Sofokles*, 136 A.D.2d 535, 536). The plaintiffs thus cannot state a claim for abuse of process based on the Hawkinses' prosecution of the NY Case.

## CONCLUSION

For the foregoing reasons, the Hawkinses' Motion to Dismiss (Docket No. 6) is hereby **GRANTED**. The plaintiffs' claims are hereby **DISMISSED**.

This Order constitutes the judgment in this case.

It is so **ORDERED**.

ENTERED this 18th day of January 2019.

_____
ALETA A. TRAUGER
United States District Judge

---

[6] In making choice-of-law determinations for tort claims, Tennessee has adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws (1971). *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992). The state with the most significant relationship to the plaintiffs' abuse of process claim is New York, where the NY Case is being litigated. New York law thus governs the claim.